In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3240

SARA SIROTZKY,

*Plaintiff-Appellant,*

*v.*

NEW YORK STOCK EXCHANGE and
SANFORD C. BERNSTEIN & CO., INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 970—**Marvin E. Aspen,** *Judge.*

ARGUED MAY 21, 2003—DECIDED OCTOBER 29, 2003

Before FLAUM, *Chief Judge*, and POSNER and MANION,
*Circuit Judges.*

POSNER, *Circuit Judge.* Sara Sirotzky hired the Bernstein
firm to give her investment advice, pursuant to a contract
that provided for arbitration under the arbitration rules of
the New York Stock Exchange of any dispute arising out of
the contract. Sure enough, a dispute arose and Sirotzky
invoked arbitration, seeking $242,000 in damages. The

arbitrators, after a hearing in Chicago, ruled in Bernstein's favor and ordered Sirotzky as the losing party to pay the New York Stock Exchange $4,800, the NYSE's fee for providing the parties with an arbitral forum. Rather than comply, Sirotzky sued both Bernstein and the Exchange in an Illinois state court, seeking to vacate the arbitrators' decision on the ground that at the arbitration hearing Bernstein had been represented by a lawyer not admitted to practice in Illinois. After the state judge determined that the amount in controversy included the damages that Sirotzky had sought from Bernstein in the arbitration proceeding and not just the amount of the fee that she had been ordered to pay the New York Stock Exchange, Bernstein and the Exchange removed the case to federal district court under 28 U.S.C. § 1441, the plaintiff and defendants being of diverse citizenship and the defendants citizens of a state other than Illinois. (Citizens of the state in which a diversity suit is brought cannot remove. 28 U.S.C. § 1441(b).) The district court ruled that the only amount in controversy was the fee, which was less than the minimum amount required for a diversity suit in federal court, and so he remanded the case to the state court. That court then decided the merits of Sirotzky's suit against her, and her appeal from that decision is pending in the Illinois Appellate Court.

Sirotzky asked the district court to award her the attorney's fees that she had incurred in getting the court to remand her case. The court refused on the ground that the theory on which the defendants had based their removal of the case was, though erroneous, not frivolous. She appeals.

An order remanding a removed case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," 28 U.S.C.

§ 1447(c), and although the statute does not set forth criteria for the exercise of this authority, the cases are pretty much at one in holding that the plaintiff must show that the remand order was correct (that is, that removal was improper), but need not show that the removal was in bad faith, and that the district court has a broad discretion in deciding whether to award fees. See *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000); *Tenner v. Zurek*, 168 F.3d 328, 329-30 (7th Cir. 1999); *Suder v. Blue Circle, Inc.*, 116 F.3d 1351 (10th Cir. 1997); *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir. 1997); *Stallworth v. Greater Cleveland Regional Transit Authority*, 105 F.3d 252, 258 (6th Cir. 1997); *Mints v. Educational Testing Service*, 99 F.3d 1253, 1260-61 (3d Cir. 1996); *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238 (6th Cir. 1993); *Morgan Guaranty Trust Co. v. Republic of Palau*, 971 F.2d 917, 923-24 (2d Cir. 1992).

Our court has taken the further step of holding that, provided removal was improper, the plaintiff is *presumptively* entitled to an award of fees, as under standard fee-shifting statutes, such as 42 U.S.C. § 1988. See, besides the *Garbie* decision cited in the preceding paragraph, *Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363, 367-68 (7th Cir. 2000), and *Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 927 (7th Cir. 2000). It is true that the normal fee-shifting statute does not entitle a party to an award of attorney's fees merely for prevailing on a preliminary ruling, *Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980) (per curiam); *Linda W. v. Indiana Dept. of Education*, 200 F.3d 504, 507 (7th Cir. 1999), and it is also true that a remand order is preliminary to the decision of the case on the merits; but section 1447(c) expressly authorizes an award of fees for obtaining such an order. Nevertheless, the entitlement is not automatic—the presumption is not irrebuttable—and we

do not think the district judge committed an abuse of discretion in denying Sirotzky her fees.

A threshold question, not free from doubt, is whether the district judge was correct to remand the case. (If he was not, Sirotzky cannot get to first base with her claim for an award of fees.) Had Sirotzky told the state court that her only object in seeking to set aside the arbitrators' award was to avoid having to pay the New York Stock Exchange's $4,800 fee, that would have been the amount in controversy and the suit could not have been removed. But she did not do that. Not until the oral argument of her appeal to this court did her lawyer state that his client had no intention of seeking a new arbitration hearing at which she might win the $242,000 that she had sought at the original hearing. The natural and so far as appears the correct assumption until this disclaimer was made—which was long after the removal of Sirotzky's case to the district court—was that she was seeking to set aside the arbitrators' decision in favor of Bernstein so that she could get another shot at the $242,000 that she claimed were the damages caused her by Bernstein's alleged breach of contract. Why else would she bother to sue? To avoid having to pay a paltry $4,800 arbitration fee? Not that $4,800 is paltry in itself, but it is paltry in relation to the expense of litigation, suggesting that more must have been at stake. And why did she also ask the state court to vacate the arbitral award in Bernstein's favor—not an award of damages, but an award stating that Bernstein had no liability—unless she wanted another crack at Bernstein?

If, as is the inescapable inference from the circumstances just recited, Sirotzky changed her mind about seeking a new arbitration only *after* the case was removed, the remand was improper, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291-93 (1938); *Chase v. Shop 'N Save Warehouse*

*Foods, Inc.*, 110 F.3d 424, 429 (7th Cir. 1997); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366-68 (7th Cir. 1993), because federal jurisdiction is determined as of the date of removal. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776-77 (7th Cir. 1986); *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1306 n. 1 (11th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). But this is provided that the amount in controversy in a suit to set aside an arbitral decision denying relief is the amount of relief sought. And a judgment setting aside the arbitrators' decision would not have put $242,000, or any other amount of money, in Sirotzky's pocket. But if a plaintiff sues for $242,000 in state court, loses, and the case is then removed to federal court, the amount in controversy is still $242,000, though we cannot find a case that says this, doubtless because it is rare, although not unknown, see *Decubas v. Norfolk Southern Corp.*, 683 F. Supp. 259 (M.D. Ga. 1988); *Haniford v. American Motor Sales Corp.*, 471 F. Supp. 328 (D.S.C. 1974), for a defendant to be able to remove a case after it has already gone to trial, since a defendant has only 30 days after learning of the basis for removal to exercise his right to remove. 28 U.S.C. § 1446(b). At any rate, that is the natural analogy to the present case.

True, two cases at least superficially much like this one—cases on which the district court relied in holding that the amount in controversy was only $4,800 in this case—refuse to consider the possible outcome of the arbitration proceeding in determining the amount in controversy in a suit to set aside the arbitrators' award. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472-73 (11th Cir. 1997); *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255, 259-60 (6th Cir. 1994). But in neither case was the plaintiff seeking to re-open the arbitration. Here that was not clear when the case

was remanded; on the contrary, it seemed clear that the plaintiff wanted to reopen the arbitration; and the amount in controversy in any new arbitration proceeding that might be conducted after the award in the old one was set aside would be the $242,000 that Sirotzky had sought originally. It is not as if the arbitrators had ruled that even if she could prove a breach of contract, her damages would not exceed the $75,000 minimum amount in controversy required in a diversity case.

*Bull HN Information Systems, Inc. v. Hutson*, 229 F.3d 321, 329 (1st Cir. 2000), supports our conclusion that the amount in controversy in a suit challenging an arbitration award includes the matter at stake in the arbitration, provided the plaintiff is seeking to reopen the arbitration. See also *Choice Hotels Int'l, Inc. v. Felizardo*, 2003 WL 21998793, at *2 (D. Md. Aug. 12, 2003).

Sirotzky argues that the defendants removed the case not because they thought she would seek a new arbitration hearing if she prevailed in state court but because the state court had determined that there was federal jurisdiction; and she points out that a state court cannot confer jurisdiction on a federal court. That is true but the context in which the state judge issued his order refutes her interpretation of it. To confirm that the case was removable, the defendants had in the state court proceeding asked Sirotzky to admit that the amount in controversy exceeded $75,000. In response she denied that it exceeded $75,000, but she did not do so on the ground that all that she was seeking in the lawsuit was $4,800; and it would of course be odd, as we have suggested, to commence a lawsuit for so tiny a sum. The apparent basis of her denial that the amount in controversy exceeded $75,000 was the legal position that the district judge later accepted and we have just rejected that the stakes in any reopened arbitration are irrelevant to the amount in controversy. So the

defendants asked the state judge to rule that the amount in controversy included the $242,000 that Sirotzky had sought in the arbitration and presumably would seek anew if the arbitrators' decision against her was overturned, as they were asking the state judge to do. He obliged, and the defendants noted this in their removal petition, since the state judge's finding, while of course not conclusive, strengthened their contention that the suit was within federal jurisdiction and hence removable. The defendants did not contend that a state judge can *order* a federal court to assume jurisdiction over a case.

If anyone has behaved frivolously in this litigation, justifying a denial of attorney's fees otherwise presumptively available, it is the plaintiff (or the plaintiff's lawyer). If in suing to upend the arbitrators' decision the plaintiff really just wanted her $4,800 back, why didn't she say so, which would have headed off the removal and so avoided the expense to her of procuring a remand? It is the defendants who should be complaining about having been put to an unnecessary expense in removing the case and then fighting the remand. And the judge about having to wrestle with the issue of removability.

And then there is the dubious merit of the underlying suit. We have had many cases, though more criminal than civil, in which a party complains about not having a lawyer; but Sirotzky's is our first case in which a party who has a lawyer is complaining that his opponent does not have a (licensed) lawyer. Ordinarily a litigant is delighted to find himself up against an unrepresented party, or a party represented by a defrocked or otherwise ineligible lawyer.

Yet the cases are divided on whether a judgment is reversible merely because one's opponent was not represented by a licensed lawyer. Compare *Alexander v. Robertson*, 882 F.2d 421, 423-25 (9th Cir. 1989), and *Gomes v. Roney*, 151

Cal. Rptr. 756 (Cal. App. 1979), holding that it is not, with *Leonard v. Walsh*, 220 N.E.2d 57, 58 (Ill. App. 1966); cf. *Jacobs v. Queen Ins. Co. of America*, 213 N.W. 14, 15 (S.D. 1927); *State ex rel. Mather v. Carnes*, 551 S.W.2d 272, 288 (Mo. App. 1977), holding that it is. A rule of automatic reversal is difficult to defend, but Sirotzky's gripe is that at the arbitration hearing Bernstein's New York lawyer was permitted to engage in tactics that an Illinois lawyer would be forbidden by the rules of ethics governing members of the Illinois bar to engage in, and if this is right it does suggest a way in which a litigant can be harmed by the unlicensed status of his opponent's lawyer. However, the procedures and evidentiary rules in arbitration are matters for the arbitrators and the arbitration contract to determine, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995); *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 647 (7th Cir. 2002); *Smart v. International Brotherhood of Electrical Workers, Local 702*, 315 F.3d 721, 726 (7th Cir. 2002); *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999), rather than for a court to impose. The rules of the New York Stock Exchange governing arbitration do not even require parties to be represented by a lawyer, see Rule 614, *Article XI NYSE Constitution and Arbitration Rules*, June 2003, at 17, http://www.nyse.com/pdfs/Rules.pdf; *A Guide to Arbitration at the New York Stock Exchange*, at 1-2, http://www.nyse.com/pdfs/Guidelns2.pdf, let alone a licensed one, even if they are institutions rather than individuals and hence would not in ordinary litigation be allowed to proceed without a lawyer.

Had Bernstein brought a pit bull to the hearing to intimidate the arbitrators, Sirotzky would have grounds for objection, because the Federal Arbitration Act, which specifies the grounds on which an arbitration award can be set aside by a federal court, includes as one of them

procuring an award by "undue means." 9 U.S.C. § 10(a)(1). To that extent federal law, in cases such as this in which the FAA is applicable, does regulate arbitral procedure. But it fixes only the most distant of outer bounds. It does not require the presence of lawyers, licensed or otherwise. If as happened Bernstein *merely* was represented by a lawyer (rather than by a pit bull) not admitted in Illinois, it was for the arbitrators, not the court, to decide whether this was a proper procedure.

There is nothing *outré* about this conclusion. Every tribunal determines, subject to due process limitations not remotely transgressed in this case, who is eligible to practice before it. The United States Tax Court, for example, allows nonlawyers who pass an examination and meet other qualifications to represent clients before the court. See Tax Court. R. 200(a)(3); *Hawkins v. Commissioner*, 85 T.C.M. (CCH) 1530, 2003 WL 21436740 (U.S. Tax Ct. 2003). Likewise the New York Stock Exchange determines eligibility for practice before the arbitral forums that it provides, and its rules have not been violated.

For the reasons explained, the district judge did not abuse his discretion in refusing to award Sirotzky the attorney's fees that she incurred in getting her case remanded to the state court.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*