**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,
          *Plaintiff-Appellee,*

          v.

SHIV HOSPITALITY, L.L.C.;
BHAGIRATH S. JOSHI; ALAKNANDA B.
JOSHI,
          *Defendants-Appellants.*

No. 05-2201

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,
          *Plaintiff-Appellee,*

          v.

SHIV HOSPITALITY, L.L.C.;
BHAGIRATH S. JOSHI; ALAKNANDA B.
JOSHI,
          *Defendants-Appellants.*

No. 06-1043

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Marvin J. Garbis, Senior District Judge.
(CA-00-3462-8-MJG)

Argued: May 24, 2007

Decided: June 20, 2007

Before WIDENER, WILLIAMS, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Williams wrote the opinion, in which Judge Widener and Judge Shedd joined.

---

**COUNSEL**

**ARGUED:** Onkar Nath Sharma, Silver Spring, Maryland, for Appellants. Jeremy W. Schulman, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellee. **ON BRIEF:** Kerry S. McGeever, Silver Spring, Maryland, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Appellants Shiv Hospitality, Bhagirath Joshi, and Alaknanda Joshi (collectively "Shiv") appeal the district court's confirmation of an arbitrator's award to Appellee Choice Hotels International. The award stemmed from a failed franchise agreement between Shiv and Choice Hotels. Because the district court had jurisdiction to confirm the award and Shiv's objections were time barred, we affirm.

I.

In 1998, Choice Hotels and Shiv entered into a franchise agreement authorizing Shiv to use Choice Hotels' brand name, Quality Inn, for a hotel in Denham Springs, Louisiana. Shiv began operating the hotel in April 1999. Soon thereafter, Shiv defaulted on payments of various franchise fees, and Choice Hotels ultimately terminated the franchise agreement on June 8, 2000.

On November 22, 2000, Choice Hotels filed suit for breach of contract in the District of Maryland,[1] seeking $116,432.28 in money damages as well as interest, attorney fees, and costs. Shiv thereafter filed a motion to dismiss, contending that the district court lacked personal

---

[1]The franchise agreement was made in Silver Spring, Maryland, which is Choice Hotels' principal place of business.

jurisdiction over Shiv and subject matter jurisdiction over the dispute. Shiv further argued that venue was improper and that Choice Hotels' claims had to be dismissed because of the franchise agreement's arbitration provision. On April 30, 2001, the district court denied Shiv's motion to dismiss.

Shiv promptly noted an appeal and was prepared to argue that Choice Hotels' claims were required to proceed to arbitration. While Shiv's appeal was pending, we decided *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir 2001), which concerned a nearly identical arbitration agreement. In that opinion, we rejected Choice Hotels' "extremely broad reading" of the arbitration exceptions that would result in excluding from arbitration "all claims (by Choice) seeking monetary damages." *Id.* at 711. In light of the *BSR Tropicana* opinion, we remanded the Shiv appeal to the district court for further consideration.

Upon remand, the district court interpreted *BSR Tropicana* as requiring the parties to proceed with arbitration with most of their claims. Accordingly, the court issued an order on November 28, 2001, staying the case "pending resolution of the arbitration proceedings." (J.A. at 247.)[2] The parties then proceeded to arbitration, where they both made claims against one another.

The arbitration hearing began on March 17, 2003. The arbitration resulted in an award granting Choice Hotels' claims for (1) franchise and service charges, (2) communications agreement charges, and (3) interest of 1.5% on the awards. The arbitrator also denied Choice Hotels' claims for lost profits due to early termination and trademark infringement and Shiv's counterclaim for breach of contract. Finally, the arbitrator denied both parties' claims for attorney fees and costs. The total arbitration award to Choice Hotels was $59,208.75 plus 1.5% interest each month until paid. The award was final on December 9, 2003.

On September 15, 2004, approximately nine months after the award was finalized, Choice Hotels returned to the district court and

---

[2]Citations to the "J.A." refer to the joint appendix filed with this appeal.

asked it to reopen the case to confirm the arbitration award. On October 4, 2004, Shiv filed an opposition to Choice Hotels' application to confirm and further contended that the award should be vacated. Shiv also asked for $36,935.00 in attorney fees and costs.

In Shiv's application, it claimed that the district court lacked subject matter jurisdiction to confirm the award because the award was less than $75,000. In the alternative, Shiv contended that the arbitrator lacked jurisdiction over the case and that Shiv was contractually entitled to an award of attorney fees under the franchise agreement.

The district court rejected Shiv's arguments and confirmed the award. With respect to the subject matter jurisdiction argument, the district court found that the amount in controversy was actually $96,143.75 because the court had to take into account the $59,208.75 that Choice Hotels wanted confirmed and the $36,935.00 that Shiv was asking for in attorney fees pursuant to the franchise agreement.[3] *See, e.g.*, *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1078 (7th Cir. 1986) ("[W]here a litigant has a right, based on contract, statute, or other legal authority, to an award of attorney's fees if he prevails in the litigation, a reasonable estimate of those fees may be included in determining whether the jurisdiction minimum is satisfied." (internal quotation marks omitted)). With respect to Shiv's arguments on the merits, the district court found that Shiv was procedurally barred from attempting to vacate or modify the award because it did not challenge the award within three months of its filing.

Shiv timely appealed. We have appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

II.

Shiv argues that the district court erred in finding that subject matter jurisdiction existed, and we, therefore, must dismiss for lack of jurisdiction. We review de novo questions of subject matter jurisdic-

---

[3]As an alternative grounds for jurisdiction, the district court found that the amount in controversy requirement was satisfied because by the time Choice Hotels made its motion to reopen to confirm the award, the interest from the award had made the total award equal to more than $75,000.

tion. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).

As a court of limited jurisdiction, we are obligated to satisfy ourself of our jurisdiction as well as that of the district court. *See, e.g.*, *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007). "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) (internal quotation marks omitted).

If federal jurisdiction is proper in this case, it must be under the diversity of citizenship statute, 28 U.S.C.A. § 1332 (West 2006), as no federal question exists and the Federal Arbitration Act does not itself create federal-question jurisdiction. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 25 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction . . . .").

Under § 1332, district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C.A. § 1332. Here, the parties are completely diverse: Shiv Hospitality is a Louisiana company and the Joshis are Louisiana citizens whereas Choice Hotels is a Delaware corporation. Shiv, however, argues that because Choice Hotels sought only to confirm the arbitrator's award of $59,208.75, the amount in controversy was equal to exactly that sum, and the $75,000 threshold was therefore not met. We disagree.

Courts have taken different approaches when determining the amount in controversy at issue in an application to confirm or vacate an arbitration award. *See generally* Christopher L. Frost, *Welcome to the Jungle: Rethinking the Amount in Controversy in a Petition to Vacate an Arbitration Award Under the Federal Arbitration Act*, 32 Pepp. L. Rev. 227 (2005). For example, some courts have held that the amount in controversy is equal to the amount of the award regard-

less of how much was sought at the beginning of the arbitration proceeding. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (holding that because the amount sought to be vacated was only $36,284.69, there was a "legal certainty" the amount in controversy could not be met). Other courts appear to measure the amount in controversy by examining the amount sought in arbitration, as opposed to the actual amount awarded. *See Am. Guar. Co. v. Caldwell*, 72 F.2d 209, 211 (9th Cir. 1934) ("It is the amount in controversy which determines jurisdiction, not the amount of the award."). Finally, most courts appear to adopt a mixed approach when confronted with an application to vacate an award *and reopen* the arbitration. Under such an approach, "the amount in controversy in a suit challenging an arbitration award includes the matter at stake in the arbitration, provided the plaintiff is seeking to reopen the arbitration." *Sirotzky v. N.Y. Stock Exchange*, 347 F.3d 985, 989 (7th Cir. 2003). Thus, the amount in controversy in such situations is the amount awarded in arbitration *in addition to* the amount that would be at play if arbitration was reopened.

Although we have yet to opine on this interesting question, we have no occasion to do so here, as these cases are inapposite to our inquiry. In the aforementioned cases, the parties filed actions in the district court after a final award by an arbitrator. Choice Hotels, on the other hand, filed its initial complaint in late 2000 and its amended complaint in early 2001, and its federal action was stayed pending arbitration. We are therefore presented with a situation quite different from one in which the parties proceed directly to arbitration and then file a complaint in district court seeking confirmation or vacatur of an arbitration award. Here, Choice Hotels first filed a complaint in district court, and the district court then *stayed* the complaint until after arbitration. It was only after the arbitrator issued its award that Choice Hotels asked the district court to *reopen* the original case.

The black letter rule "has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). Thus, for example, jurisdiction is not suddenly lacking over an appeal simply because the judgment awarded by a district court is less than $75,000. Likewise, parties deciding to settle a suit

for less than $75,000 do not suddenly divest a district court of jurisdiction to approve the settlement.

Choice Hotels demanded well over $75,000 in its complaint, and there is no allegation that claim was not in good faith. That Choice Hotels did not win a judgment in arbitration for that amount is irrelevant in this context. "Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938); *see Hood v. Bell*, 84 F.2d 136, 137 (4th Cir. 1936) (holding that a court does not lose diversity jurisdiction "because of a subsequent change in the conditions upon which jurisdiction was originally based").

Because the district court simply stayed this action, and then reopened it to confirm the award, we must determine the amount in controversy from the complaint itself. We therefore hold that the district court had subject matter jurisdiction under § 1332 because the good faith amount in controversy contained in Choice Hotels' complaint well exceeded the $75,000 threshold.[4]

## III.

Shiv further contends that the arbitrator exceeded its authority and disregarded our prior precedents and the law in granting an award to Choice Hotels.[5] We review de novo the district court's decision to

[4]Because the amount in controversy requirement was satisfied under Choice Hotels' complaint, we need not, and do not, address whether the amount in controversy could have been satisfied based on the interest accrued on the arbitrator's award or Shiv's counterclaim for attorney fees under the franchise agreement.

[5]It is somewhat ironic that Shiv is now contesting the arbitrator's authority to issue the award in this case. It originally contested Choice Hotels' "refus[al] to arbitrate its claims resulting from the unilateral termination of the Agreement." (J.A. at 47.) It now contends that some of those claims were not subject to arbitration. *See Rock-Tenn Co. v. United Paperworkers Int'l Union*, 184 F.3d 330, 334 (4th Cir. 1999) (holding that "parties can manifest their agreement to arbitrate by conduct, for example by submitting without objection to arbitration of a dispute").

confirm an arbitration award. *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993).

Federal courts must give "great deference" to an arbitration award. *Id.* The Supreme Court has explained that because parties have authorized an arbitrator "to give meaning to the language of [an] agreement, a court should not reject an award on the ground that an arbitrator misread the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "As long as the arbitrator is even arguably construing or applying the contract," a court may not vacate the arbitrator's judgment. *Id.* Therefore, an award may be reversed only "when arbitrators understand and correctly state the law, but proceed to disregard the same." *Upshor Coals Corp. v. United Mine Workers*, 933 F.2d 225, 229 (4th Cir. 1991) (internal quotation marks omitted).

The district court found that Shiv's claims contesting confirmation were time barred. We agree.

Under the Federal Arbitration Act, "[n]otice of motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C.A. § 12 (West 1999). The arbitration award here was issued on December 9, 2003. This gave Shiv until March 9, 2003 to contest the award. Shiv missed this deadline by approximately six months.

In *Taylor v. Nelson*, we were faced with a case nearly identical to this case. 788 F.2d 220 (4th Cir. 1986). Nelson sought confirmation of an arbitration award. Five months after the award was issued, Taylor sought to vacate it, and the district court complied. We reversed, holding that "once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm." *Id.* at 225. In doing so, we explained:

> A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act. Under the Act, vacation of an award is obtainable by serving a motion to vacate within

three months of the rendering of the award. 9 U.S.C. § 12. Because Nelson did not move for confirmation until April 10, 1985, almost seven months after the award was filed, Taylor would be prevented from seeking a vacatur of the award unless there was pending in the district court a timely-filed motion to vacate or unless a tolling or due diligence exception operated to excuse his failure to make a timely motion.

*Id.* (footnote omitted).

In *Taylor*, we also assumed, for the sake of argument, that due diligence or tolling were exceptions to the three-month bar.[6] *Id.* Nevertheless, we held that Taylor was not entitled to any reprieve because Taylor chose "to wait longer than three months before he made a motion to vacate, and . . . that has proven fatal to his attempt to overturn the arbitration award. Taylor remained free at all times to pursue the statutory remedy of § 12 within the time limits set out by that statute, and he is not entitled to the benefit of any due diligence or tolling exceptions to the three-month rule, even if such exceptions exist." *Id.* at 226.

Shiv, likewise, can offer no reason for why it chose to wait until Choice Hotels sought to confirm the award before attempting to vacate the award. In a confusing manner, it appears to argue that it chose not to file within three months because the award was obviously contrary to Fourth Circuit law. But this makes no sense. If the award was without-a-doubt ultra vires, Shiv should have been jumping at the chance to return to federal court and have the award vacated. Instead, it chose to do nothing.

---

[6]We noted, however, that such an assumption was "questionable." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). *But see Young v. United States*, 535 U.S. 43, 49-50 (2002) (noting that "Congress must be presumed to draft limitations periods in light of" the principle "that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute" (internal quotation marks and citation omitted)).

IV.

The Federal Arbitration Act gives a party one year to confirm an award, but mandates that any issue concerning vacatur be filed within three months of the award. This is a sensible policy that allows the confirmation process to be streamlined. Instead of filing within three months, however, Shiv decided to sleep on its rights and presumably hope that Choice Hotels would not timely file for confirmation. This was poor strategy, as Shiv has offered no reason, compelling or otherwise, for why it did not file to vacate the award within three months. Accordingly, we affirm the district court's confirmation of the award.

*AFFIRMED*